# FARMERS & MERCHANTS STATE BANK OF MORGAN v. C. B. HUSCHKE.[1]

November 6, 1925.

No. 24,800.

**Defendant's notes were paid by receipts from collateral notes.**

1. The evidence sustains the finding of the jury that there was deposited with the plaintiff bank notes collateral to the notes of the defendant upon which this action is brought, and that the payment of the collateral paid the notes.

**Definition of estoppel.**

2. To work an estoppel the one against whom it is asserted must be at fault, and the one invoking it must have acted to his injury. Representations made by the board of directors of the bank, of whom the defendant was one, to a bank examiner of the state, that the notes in suit and the collateral notes were assets of the bank, there being no reliance or change of position or harm resulting, do not work an estoppel.

1. See Bills and Notes, 8 C. J. p. 1057, § 1365.
2. Estoppel, 21 C. J. pp. 1114, § 116; 1135, § 136.

[1]Reported in 205 N. W. 637.

Action in the district court for Redwood county. The case was tried before Olsen, J., and a jury which returned a verdict in favor of defendant. Plaintiff appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Albert D. Flor* and *Cobb, Wheelwright, Hoke & Benson,* for appellant.

*Somsen, Dempsey & Flor,* for respondent.

DIBELL, J.

Action to recover upon promissory notes made by the defendant to the plaintiff. The defense was payment through the application of collaterals. There was a verdict for the defendant. The plaintiff appeals from the order denying its alternative motion for judgment or a new trial.

1. There were two notes, one for $3,233.33, dated April 10, 1922, and another for $2,544, dated September 22, 1922, both made by the defendant to the bank. They were renewals of notes existing on and prior to March 1, 1920.

One Jackson was the president of the plaintiff bank. It was a one-man institution, Jackson the man, with a nondirecting board of directors. He bought and sold real estate in addition. About March 1, 1920, he needed money to close certain contracts which he had made for the purchase of land. He had contracted to sell the same land. He asked the defendant to make a note to the bank and let him have the proceeds to close the purchases. The defendant was interested by way of commissions in the sales. He agreed to make the note upon Jackson's promise that he would put as collateral to his note, and to other notes of the defendant to the bank, certain mortgages which he was about to get from Theodore Schmidt and Philip Schmidt upon the sale of a farm to each, the farms which he was selling to them being farms which he had bought on contract for the closing of which he needed the money. Pursuant to this agreement the defendant executed a note for $7,471.40, took credit on his account at the bank, and gave Jackson the proceeds.

Jackson soon after received from Philip Schmidt mortgage notes for $6,471.40, which at his instance were made payable to the bank, and they were applied on the $7,471.40 note. The unpaid balance went into renewal notes and was finally paid. Jackson received $10,000 in mortgage notes from Theodore Schmidt, one for $6,000 and one for $4,000. They too, at his instance, were made payable to the bank. They were held by him in the bank, either in his possession or that of the bank. He informed the defendant that they were held as collateral to the latter's obligations to the bank.

Not earlier than some time in August, 1920, one of the Theodore Schmidt notes, and some later the other, were entered upon the discount register of the bank. Schmidt got nothing from the bank for them. The record does not give the details, but it is fairly inferred that they were taken by the bank in substitution of other notes which were surrendered or charged off, more likely the latter; and in the transaction Jackson received a credit of $1,675.

With the bank conducted as it was, it is not easy to determine whether a particular transaction was with the bank or with Jackson. The bank received the proceeds of the Schmidt notes which exceeded the amount of the defendant's obligations to the bank. The jury was justified in finding that the Schmidt notes were received as collateral by the bank, that it did not take them for value as discounts, and that they were not held by Jackson under a personal arrangement between him and the defendant. And further, if the defendant's story of the arrangement with Jackson is true, and the jury accepted it, the plaintiff can hardly recover. Concededly the Philip Schmidt note was applied at once on the $7,471.40 note, and the balance finally paid. The other notes did not get to the discount register for months later. If Jackson held them secretly in the meantime, and misappropriated them for some purpose of his own by treating them as assets of the bank received for value, the bank taking them at such time, payable as they were to it, and dated of a much earlier date, was put upon inquiry, as suggested by the trial court, and hardly could claim to be an innocent holder.

2. In 1922 the directors, the defendant then being on the board,

certified to the bank examiner that a list of notes, which included those of the defendant and the Theodore Schmidt notes, constituted assets of the bank, and no mention was made that the latter were collateral.

From this the plaintiff claims an estoppel. The court refused to submit the contention to the jury. Probably the defendant had little appreciation of the statement made. But anyway there is no estoppel. To create an estoppel there must be fault in the one against whom it is sought to assert it and reliance by the one invoking it and resulting injury. St. Denis v. Mullen, 157 Minn. 266, 196 N. W. 258; Helmer v. Shevlin-Mathieu L. Co. 129 Minn. 25, 151 N. W. 421; Ekblaw v. Nelson, 124 Minn. 335, 144 N. W. 1094; Western Land Assn. v. Banks, 80 Minn. 317, 83 N. W. 192; Dun. Dig. §§ 3187, 3191-3192, and cases cited. There is nothing to suggest that the plaintiff relied upon the representation, or changed its position or was harmed because of it. The case of White v. Leslie, 54 How. Pr. (N. Y.) 394, as we read it, does not have the effect which plaintiff urges.

Order affirmed.