ALBERT OEHME v. EMILY JOHNSON AND OTHERS.
CENTRAL WEST CASUALTY COMPANY, GARNISHEE.[1]

July 25, 1930.

No. 27,563.

[1]Reported in 231 N. W. 817.

*L. K. Eaton,* for appellant.

*Daggett & Redlund,* for respondent.

DIBELL, J.

The defendant Emily Johnson was the owner of an automobile and was insured by the Central West Casualty Company, the garnishee. On November 24, 1927, a collision occurred between the plaintiff's auto and the defendant's auto in which the plaintiff and his wife were injured and damage was done to his auto.

The casualty company settled with the plaintiff's wife for $5,000. Suit was brought by the plaintiff alleging four items of damages. The company assumed the defense. There was a verdict in the plaintiff's favor for $3,979.70 itemized by the jury as follows:

| | | |
|---|---|---|
| (1) | Damages for injuries to the person of the plaintiff and loss of wages, | $350.00 |
| (2) | Damages to the plaintiff's car, | 282.50 |
| (3) | Damages to the plaintiff on account of doctor's and hospital bills for his wife, | 847.20 |
| (4) | Damages to the plaintiff for loss of companionship of wife, | 2,500.00 |

The insurer refused to pay. Following the recognized practice in this state the plaintiff instituted proceedings in garnishment against the casualty company, which resulted in findings and conclusions directing judgment for $4,041.57 against the garnishee. It appeals from the order denying its motion for a new trial.

The company admits its liability for so much of the judgment as is represented by the first and second items of the verdict, amounting to $632.50. It disclaims liability for hospital and medical expenses and loss of companionship as found in the third and fourth items in the sum of $3,347.20 upon the ground that they are not within the coverage of the policy.

The trial court finds, and its finding is not disputed, that upon the occurrence of the accident Mrs. Johnson gave the insurer notice

and full information; and that when the summons and complaint were served she delivered them to the company. The defendant assumed exclusive control of the defense. It did not deny its liability for any of the claims which might be established, said nothing to Mrs. Johnson to the effect that it was not liable for all of the items of damages, and did not question its liability until after the verdict went against her and her liability was fixed by judgment. When she went to see the company's representatives before trial, she says, and no one contradicts her, "they told me to forget about it." The trial court held that the company by what it did and failed to do, by its conduct and its actions, disabled itself from disclaiming liability for the items now contested. This holding is the basis of the judgment and the ground of the defendant's appeal.

The insurance was against "loss from liability imposed by law upon the assured for damages as a result of the ownership, maintenance or use of such automobile."

The insurer agreed:

"To investigate all accidents covered by this policy, and to defend in the name and on behalf of the assured any claim or suit covered by this policy and brought against assured, whether groundless or not, for damage suffered or alleged to have been suffered on account of bodily injuries or death or property damage."

The policy provided:

"The company reserves the right of settling any claim or suit. * * * The assured shall not interfere in any negotiation for settlement, nor in any legal proceeding, but whenever requested by the company, and at the company's expense, the assured shall aid in securing information and evidence and the attendance of witnesses, and shall co-operate with the company, except in a pecuniary way, in all matters which the company deems necessary in the defense of any suit or in the prosecution of any appeal."

The policy is a liability policy as distinguished from what is sometimes termed an indemnity policy. An obligation to pay follows though the insured has not himself paid the loss in money. The

policy does not contain a "no action" clause such as is found in some policies. There is no question of the plaintiff's right to recover of the casualty company now and in this proceeding if there is liability; that is, the procedure is proper.

We assume that the insurance company was not liable for items three and four if they were properly opposed. The question is one of difficulty to be determined upon the construction of the policy. The parties have given much space to it in their briefs. Our consideration of the question gives no immediate answer. In some other cases it may require close consideration. It should be understood that we do not hold that the defendant is not liable on the face of the policy for all the items claimed.

The facts which we have stated bring the case within the principle of the cases holding an insurance company liable where with knowledge of an exception to the risk it assumes the defense of the suit against the insured. The liability is variously referred to the ground of waiver, or estoppel, or waiver in the nature of estoppel, or contemporaneous construction of the contract, or an election by the insurer, or an estoppel by election—all of which terms are at times used. Courts have approached the question from different angles, have used different phraseology, and have criticized that of others, but have reached the same result whatever they named their route; and although we appreciate the advantage of correct distinctions, especially in waiver and estoppel, as noted in Vance, Ins. (2 ed.) p. 457, et seq. the thing itself which fixes the serious rights of the parties is more important than its name. The case does not seem to invite an extended discussion; but counsel have so thoroughly discussed the principle involved and the cases cited, and the parties are so certain of their views, that we take the time to consider some cases, starting with our own, where but for the serious contest made it were perhaps as well to state the necessary result and the reason for it and stop; and if they are to be used it is as well to let them speak and not to paraphrase them or give their naked result.

The case of Tozer v. Ocean A. & G. Corp. Ltd. 94 Minn. 478, 103 N. W. 509, 511; Id. 99 Minn. 290, 109 N. W. 410, involved an em-

ployer's liability policy. The injured boy was under age and illegally employed, and by the terms of the policy the insurer was not liable to respond for his injury. It however assumed the defense, and the boy had a verdict. The court said [94 Minn. 484]:

"While it may be that the acts of appellant were not such as to constitute a waiver, strictly speaking, yet there was at least an election of positions; and, having pursued a course of action consistent with its liability, such conduct ripened into an equitable estoppel."

In Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 283, 48 L.R.A.(N.S.) 184, the company assumed the defense and there was a recovery. The policy provided that there should be no action brought by the insured until the payment by the insured in money of the loss after trial of the issue. The court held that by assuming the defense the insurer waived the condition of prior payment of the loss by the insured; in other words, that it waived the "no action" clause of the policy. The court said [119 Minn. 313]:

"By undertaking the defense the company elected to treat plaintiff's cause of action, if he had any, as covered by its contract; and when it substituted itself and its judgment for that of the defendant, both plaintiff and defendant have a right to insist that the final judgment establishes the liability and debt of the company to the assured. The undertaking to defend is of no value, and may be of great danger, to the assured, where he thus abandons all control of the suit to the company, if it does not mean that whatever liability is established shall be discharged."

By the assumption of the defense the insurer elected to treat the cause of action one within the policy. The facts are quite different from those in the case at bar; but the case applies the principle of waiver or election or estoppel or whatever phrase we use to designate the ground of liability. It is the law of the state. It has been adopted in some others and disapproved in still others. Vance, Ins. (2 ed.) p. 682, et seq. And as remarked by the author, formerly the dean of our university law school, it has received legislative

approval in many states which have put the substance of its holding into the body of their statutory law.

The position of the plaintiff is sustained in Malley v. American Ind. Co. 297 Pa. 216, 146 A. 571, 573. There the defendant-insurer assumed the defense of an action brought by Malley against the owner of an auto for an injury sustained, and recovered judgment. The defendant refused to pay, upon the ground that the plaintiff in the damage suit was not the sole owner of the car as warranted but held it under a bailment lease. The court in holding the insurer liable said [297 Pa. 223]:

"At the trial, appellant appeared and actually engaged in the defense, and it was not until after the suit was lost that it abandoned the case and claimed plaintiff had violated the absolute warranty of the policy concerning total ownership of the car. It further stated it had no knowledge of the falsity of the statements made by the plaintiff until after the trial of this case. Where an insurance company, under an indemnity contract, takes charge of the defense of an action on which liability rests, it will be estopped from thereafter questioning the claim either because it was beyond the terms of the policy or because the latter was procured by a breach of some warranty. * * * When an insurance company or its representative is notified of loss occurring under an indemnity policy, it becomes its duty immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy. It cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, take advantage of a defect in the policy. The insured loses substantial rights when he surrenders, as he must, to the insurance carrier the conduct of the case. The insurance carrier is not placed in any disadvantageous situation, especially as the lack of ownership did not contribute to the loss. The estoppel to assert the breach of warranty as to title, is no higher in right than an estoppel generally to deny that the claim came under the policy. In effect, both are of equal merit. With a little diligence and within a brief time, the carrier could have procured the exact knowledge on which it

now relies, and in most cases may similarly prepare a defense. * * * With these facts before it, had they been deemed sufficient, it could have declined to defend the case, resting its right on the supposed breach of warranty; in deciding what course it should pursue, it is guided as any person confronted by similar circumstances; but, once having made its decision, the rights of others in relation thereto cannot be prejudiced."

And in Basta v. U. S. F. & G. Co. 107 Conn. 446, 450, 140 A. 816, 818, where the defendant reserved its right against a claim of liability, the court said:

"It was the duty of the defendant under its policy to defend on behalf of the assured any suit brought against him whether groundless or not, and it could not with safety to itself have repudiated liability when the action against Basta was tried. Having clearly informed the assured that the appearance of its attorneys on his behalf was under a full reservation of its rights under the policy, and having performed no acts which were inconsistent with such reservation, the defendant has not waived its right to defend this action. An insurer is not estopped to set up the defense that the assured's loss was not covered by the contract of indemnity by the fact that the insurer participated in the action against the assured, if at the same time it gives notice to the assured that it does not waive the benefit of such defense."

In Meyers v. Continental Cas. Co. 12 F. (2d) 52, 55, in the circuit court of appeals of the eighth circuit, the rule is stated and an abundance of cases is cited:

"Where a liability insurance company, which has issued a policy to indemnify an employer from loss from liability imposed by law on account of injuries suffered by his employes, under the terms of the policy either takes control and dominion of an action for damages brought by an injured employe against the insured or keeps such control and dominion, after full knowledge of the ground of liability, without giving seasonable notice to the insured that it does not consider itself liable under the policy, it is thereby

estopped to deny its liability. Tozer v. Ocean A. & G. Corp. Ltd. 94 Minn. 478, 103 N. W. 509; 99 Minn. 290, 109 N. W. 410." (Other cases cited are omitted.)

"Where, however, the liability insurance company, upon notice to it that the employer's liability to the employe may not be covered by the policy, promptly notifies the insured that if certain alleged facts occurred the policy does not cover loss on account of such liability, that if the occurrence of such facts is ultimately established it will disclaim liability under the policy, and that the defense of the action by it is not to be understood as a waiver of the provisions of the policy, and the insured, after such notice, makes no objection to the defense of the action by the insurer, then such defense by the insurer does not constitute a waiver of the provisions of the policy and does not estop it from asserting them in an action by the insured to recover upon the policy. Mann v. Employers Liability Assurance Corporation, 123 Minn. 305, 143 N. W. 794." (Other cases cited are omitted.)

In the case cited the insurer gave prompt notice, told the insured that it was not liable on the policy, because of a violation of law in hiring the boy injured, one Hadallar, and the trial proceeded with the assent of the insured that the insurer defend. The insured, the employer, was liable to the boy, but the insurer because of the excepted risk and reservation asserted was liable to no one.

And after reviewing a number of cases where the insurer was held liable it said [12 F. (2d) 57]:

"In each of the above cases the insurer proceeded with the defense of the action without any reservation of the right to disclaim liability, and without seasonable notice to the insured that it would disclaim liability, in the event of the establishment of facts which would exclude the loss from the provisions of the policy, and by its actions led the insured to believe that it admitted liability."

A case often quoted is Mason-Henry Press v. Aetna L. Ins. Co. 211 N. Y. 489, 105 N. E. 826, 828. There was a claim before trial that the injured boy was under the age of 16 when employed, that his employment was in violation of the state law, and that the

insurer was not liable upon the policy. There was a dispute back and forth, and the insurer suggested to the insured that the case was a dangerous one and that a settlement be made. It inquired whether the insured would contribute and was told that it would not and that it deemed the insurer liable. The insurer protested that this was bad policy. In the course of the talks the insurer called the attention of the insured to the allegation of the employe that he was being employed in violation of law and stated that if such proved to be true, "this case would not fall to us for attention." The court holding the insurer not liable said [211 N. Y. 496]:

"When the employe made his claim for damages against the insured basing such claim on various grounds which were covered by the policy of insurance, and also on the alleged violation of law which was not covered thereby, the insurer had a choice between two courses of action which would preserve the limitation on its liability which has been referred to. It could regard simply the charge of violation of law by the insured and refuse to defend the action, taking its chances that this sole ground of liability, if any, would be established, and for which it would not be liable. On the other hand, it could proceed with the defense of the action under an understanding with or notice to the insured, express or implied, that it would defend against all allegations of fault, and that if in the end it should come out that the only allegation sustained was the one of violation of law, its right should be preserved and it should not be liable. * * * Under such circumstances, I think that the insurer as a matter of safety to itself and of fairness to the insured was bound to undertake the defense of the action for the benefit of both and of each. But I think that the respondent did all that was necessary and all that it could do to preserve and assert its rights under the exemption or condition while thus proceeding with the defense of the case. * * * All it could or was bound to do was to fairly and reasonably assert its rights under the policy in such a manner as would be notice to the insured that it did not intend to waive those rights by proceeding with the defense of the action. This it did."

In S. & E. Motor Hire Corp. v. New York Ind. Co. 134 Misc. 514, 515, 235 N. Y. S. 626, 628, the court said:

"The sole ground on which the defendant resists payment is that the plaintiff's claim is not within the terms of the policy, because at the time of the accident the plaintiff's chauffeur, who caused the accident to Nelson, was under 18 years of age; hence, was operating the truck in violation of law as to age. * * * The defendant by this proof thus established its defense, unless, as plaintiff claims and sets up in its reply, the defendant when it undertook the defense of the Nelson case waived the benefit of the 'exclusion' based on the chauffeur's age.

"The general rule in this state is to the effect that an insurer, who is by the policy required to defend actions brought against an insured, and who with *knowledge of the violation by the insured of a condition subsequent in the policy,* nevertheless undertakes to defend such an action, waives the benefit of the condition and will not thereafter be allowed to abandon the defense or to disclaim liability to the assured. This rule is well established by a long line of decisions in this state. But it must be shown that at the time of the waiver the company had knowledge of the facts constituting the forfeiture."

In the case at bar the insurer, after suit brought, had definite notice of the claim of damages made and suggested that the insured forget about the accident.

In Farrell v. Merchants M. A. L. Ins. Co. 203 App. Div. 118, 196 N. Y. S. 383, 385, these facts appear: When the summons and complaint were served on the defendant it had knowledge that immediate notice of the accident had not been given and that the condition of the policy had been broken, and it nevertheless assumed the defense. The court said [203 App. Div. 121]:

"Undoubtedly with the consent of the assured the company may assume power over the litigation and reserve the right to repudiate liability thereafter, and the consent may be either expressed or inferred from the acquiescence of the assured. * * *

"If the company were ignorant of the facts upon which the invalidity of the policy depended, the assumption of the defense would not be evidence of a waiver."

Our holdings are in accord with others. In Mann v. Employers L. A. Corp. 123 Minn. 305, 143 N. W. 794, the insurer claimed that the loss was not covered by the terms of the policy. The insurer defended with the understanding that it would not be liable for risks not within the policy. The recovery was for such risks, and it was permitted to defend and successfully defended against them. So in Eckert v. Joice, 152 Minn. 440, 189 N. W. 125, the insurer defended, claiming that no policy was in force, but defended with an understanding that it disclaimed liability. There was a recovery by Eckert against Joice. In the proceeding against the insurance company the proof did not show the existence of a policy, and a verdict was directed for the insurer. In Humphrey v. Polski, 161 Minn. 61, 200 N. W. 812, it was understood that the assumption of the defense should not be a waiver. In Standard Printing Co. v. Fidelity & D. Co. 138 Minn. 304, 164 N. W. 1022, it was held, in accordance with the holding in other states, that the insurer could not withdraw without cause after having assumed the defense.

Again we note that when the insurer, with knowledge that the insured is not protected by the policy, assumes the defense without reservation or notice to the insured, the courts do not think it necessary that the insured show that he was misled. Thus in Royle Min. Co. v. Fidelity & Casualty Co. 161 Mo. App. 185, 195, 201, 241 S. W. 438, 442, 444, the court said:

"When the insurer undertakes the control of the defense of an action brought by the injured person against the insured, with full information of the character of the action, and without any reservation or notice to the insured that it did not intend to waive such objection, it will be deemed to have waived the objection that the liability was not within the terms of the insurance policy. * * *

"If the plaintiff understood that the defendant reserved its rights under its indemnity policy at the time it assumed charge of the defense, * * * then there never existed any estoppel against

the defendant; but on the contrary, if it took charge of the defense without giving plaintiff any explanation of its act, then its silence was an estoppel."

And in Royle Min. Co. v. Fidelity & Casualty Co. 126 Mo. App. 104, 114, 103 S. W. 1098, 1100, the court said:

"It is immaterial whether plaintiff could or would have compromised the action had it been left free to act, or whether it could have achieved any better results had it controlled the defense. The principle on which defendant should be held liable is that which estops a party from taking a position inconsistent with one previously assumed by him, and to the prejudice of a third person."

The reasons which induced the insurer to assume the defense are said to be unimportant. Thus in Empire State Surety Co. v. Pacific Nat. Lbr. Co. (C. C. A.) 200 F. 224, 228, the court said:

"The reasons which may have impelled the surety company to take up the defense of the action instituted by Anderson against the lumber company, and to waive the defense that the risk was not covered by the policy, are immaterial to the present case. Under the policy it had a right to defend the action; but, having selected its counsel and tried it under the general agreements of its policy, it is not just that it may, after verdict and judgment, defeat liability, upon the ground that the accident occurred because the assured failed to observe a state statute providing for the greater safety of employes. This doctrine is not a harsh one, for it rests upon the ground that in a legal proceeding one is precluded from taking a position inconsistent with the one previously assumed by him, and to the prejudice of a third person, merely because it may be for his interests to do so. So, having elected to take the matter of defense off the hands of the lumber company, under its own control, and the lumber company having acquiesced in its conduct, it will be regarded as having waived the point of exemption upon the ground already stated. * * *

"We are impressed by the fairness of this rule, and our conclusion is that, if it was the intention of the surety company to claim

that the policy did not cover the accident, its duty was to have notified the lumber company promptly of that ground, so that the lumber company could have taken charge of the defense. But when it failed to give any such notice before it went into the defense of the case at the trial in the superior court of the state, the lumber company had a right to assume that the surety company would defend the suit, as it did, under the general clauses of the policy."

If an insured is to pay a part of the recovery which may be had he should not be deprived of the right to defend in person. He should have the right to interpose his personality. Thus in Fairbanks Canning Co. v. London G. & A. Co. 154 Mo. App. 327, 133 S. W. 664, 667, the insurer was bound by its contract to assume the defense though the action was groundless; and by the same contract the insured surrendered the right to control the conduct of the action though a person vitally interested. The insured lost something, and the court referring to it said [154 Mo. App. 337]:

"If a man is to bear the burden of the result of a defense to an action, it is his privilege to have his own personality appear in its course. He is entitled to have the results measured up to him and not to some other. * * * The loss of a right to control and manage one's own case is, itself, a prejudice."

In the case at bar the judgment was for $4,041.57, of which sum the defendant concedes its liability for $632.50, or 16 per cent. The complaint, which was before the defendant when it told the insured to forget about the action, showed a demand of something over $10,000, and it concedes liability for about one-fourth of it, if established, and disclaims the remaining 75 per cent. This indicated the relative interests as it viewed them of the two parties. As to a large portion of the $10,000 claim presented by the suit, it was not a matter of financial consequence to the company whether the plaintiff lost or won; and in the verdict rendered it was interested in 16 per cent and uninterested in 84 per cent. And with all this it assumed the defense, as it was bound to do, and the insured by the terms of the policy was denied participation. When the litigation was over the insurer declined to pay more than 16 per cent

of the judgment though it had given the insured no notice that it would not pay all; and no notice, when the complaint demanded more than $10,000, that she must bear 75 per cent of the $10,000; but said to forget it.

It is argued that we are holding the defendant liable because it performed its contract, that is, because it defended the suit against the insured as its policy required; and that in doing so we are making a contract for the parties. But not so. The defendant was bound to defend the action though it was groundless. If unsuccessful, it was bound to pay within the limits of the policy. If damages were claimed in the complaint not covered by the risk, it was not required to pay them; but, knowing of them and assuming their defense without reservation and in effect taking away the right of defense which the insured might make and his right to make or negotiate a settlement, it could not later make the claim that it was not liable. The courts hold so with practical unanimity. The defendant not only made no reservation but told the insured to forget. There is no question of her good faith. There is no question of the insurer's good faith. But it was given notice and it had the complaint. The complaint showed that a claim was made for two items for which it now denies liability. The insurance company was keenly awake to its own interests. It needed no instruction as to the law; it knew it. Perhaps it was thought not wise from a legal point to press it; or the insurer might have thought it was good business policy to defend. As said in Empire State Surety Co. v. Pacific Nat. Lbr. Co. (C. C. A.) 200 F. 224, noted above, the doctrine which puts liability upon the insurer in such a case is not a harsh one. It is a wholesome one. A different one would be harsh. If there is among the cases one which relieves the insurer from liability under circumstances at all resembling the case at bar, it has not been cited, and we do not find it. Cases are cited and discussed in the following: 4 Blashfield, Cyc. Auto. Law, p. 2655, § 31k; 5 Cooley, Briefs on Ins. (2 ed.) p. 4534 (h); Sunderlin, Auto. Ins. §§ 845-847; 4 Joyce, Ins. (2 ed.) § 2800 (j); 5 Couch, Cyc. Ins. § 1175 e-g; 36 C. J. p. 1109, § 98d, p. 1110, § 100; Vance, Ins. (2 ed.) pp. 682-688, 912-918.

In Employers L. A. Corp. v. Chicago & Big Muddy C. & C. Co. 141 F. 962, in the circuit court of appeals of the seventh circuit, the insurer defended without a disclaimer of liability or a reservation of right to claim it. There was a verdict for the plaintiff in the damage suit. The insurer was held liable. We close our review of the cases with a quotation of the opinion by Grosscup, J. [141 F. 964]:

"The act of the plaintiff in error, in taking control and dominion of the action for damages, and keeping such control and dominion until judgment was entered, without notice to the defendant in error that it did not consider itself liable under the policy—thereby taking from the defendant in error the control and dominion of the action—is such a construction of the policy, by contemporaneous acts, as estops plaintiff in error from denying liability, now that that action is at an end. To take any other view of this case, would be to hold that the assurer could effectually tie the hands of the assured, in an action that might, or might not, on a close construction of the policy, be covered by the terms of the policy, and then, the cause being determined against it, insist that upon a closer reading of the policy, the assured ought to have been left to make its own defense, and at its own risk. This cannot be the law."

Order affirmed.

STONE, J. (dissenting).

Our assumption "that the insurance company was not liable [originally] for items three and four if they were properly opposed" can be justified only by holding that recovery of the expense of medical care and hospitalization for the wife and damages for the husband's loss of consortium is on "liability for loss on account of" the injury to the wife. (The insurance, limited to $5,000 for liability "on account of" injury to any one person, had already been exhausted, in respect to the wife's injury, by defendant's payment of $5,000 to her.) Assuming the correctness of that view, I cannot agree that by waiver or estoppel defendant has become obligated for more insurance than it sold and was paid for.

Waiver is the intentional surrender of a right. In insurance law it is properly applied to breaches of policy conditions by the insured so as to deprive the insurer of a defense he might otherwise have. 5 Cooley, Briefs on Ins. (2 ed.) 4534. There is nothing of that kind here. No one can point to any word or act of defendant indicating an intention to waive its contract right to have the insurance on account of the wife's injury limited to $5,000, or a willingness notwithstanding that limitation to become liable, without further premium or other consideration, in the sum of $8,347.20. On the doctrine of this decision the amount of the excess is immaterial. It happens to be $3,347.20, but any excess, and as much larger as you like, could be as easily justified.

I respectfully submit that a contractual obligation so limited cannot be so increased by mere waiver. Inasmuch as the duty was not imposed on the insurer by the contract, "he cannot create such a new duty by a waiver without consideration." Vance, Ins. (2 ed.) p. 494. The doctrine of waiver should not be used to make a new contract for the parties. Its effect is limited, I repeat, to the prevention of forfeitures which otherwise would arise from breach of condition by the insured. "While a forfeiture of benefits contracted for may be waived, the doctrine of waiver * * * cannot be successfully invoked to create a liability for benefits not contracted for at all." McCoy v. N. W. M. R. Assn. 92 Wis. 577, 585, 66 N. W. 697, 699, 47 L. R. A. 681.

Inseparable companions as they are in the literature of insurance law, waiver and estoppel are very different things. Waiver always accomplishes its result because of an intention expressed, or at least found to have been expressed. Estoppel, on the other hand, reaches its end regardless of and frequently contrary to the intention of the one estopped. However much the definitions of equitable estoppel may differ, they all agree that these two elements must be present: (1) The representation made or assurance given must have been acted upon by the one claiming the estoppel, and (2) his action thereon must have been to his prejudice. Vance, Ins. (2 ed.) p. 514. "To create an estoppel there must be fault in the one against whom it is sought to assert it and reliance by the one invoking it and

resulting injury." Farmers & M. State Bank v. Huschke, 165 Minn. 71, 74, 205 N. W. 637, 638.

In this case, the estoppel (if the decision in fact proceeds upon that theory) is based on the fact that defendant took over the defense of the original actions and in so doing told the insured to "forget it." What of it? Defendant was obligated by contract to defend the lawsuits, no matter how many of them or how ill-founded. A main policy purpose was to enable the insured, after defendant took over the defense, to "forget it" except as co-operation was required. So all that defendant did was to perform a simple contract duty, and it does seem to me that we are holding defendant estopped simply because it has performed its contract and nothing more.

That conclusion is inescapable unless the chance remark of some-one, *the record does not disclose whom,* to "forget it" is sufficient not only to prevent (by the negative operation of estoppel) a denial of liability by defendant, but also to impose on it (by the *affirmative* operation of a quasi contract) a new and additional contractual obligation. Before any such result follows such evidence, two things should appear—(1) that the person making the statement had authority to make it; and (2) where a new obligation is sought to be imposed, that there was a consideration for it.

By causing the insured to believe, when the insurer takes over the defense, that a cause of action is covered by the policy and by proceeding apparently on that theory, an insurer may estop itself from claiming, after the litigation has ended adversely, that the claim was not covered and it is not liable. Tozer v. Ocean A. & G. Co. 94 Minn. 478, 103 N. W. 509. In Patterson v. Adan, 119 Minn. 308, 315, 138 N. W. 281, 48 L.R.A. (N.S.) 184, there was an estoppel to assert a breach of a mere condition precedent, payment by the insured of the judgment being the condition. But the liability of the insured to pay the judgment was expressly limited to an amount "not exceeding the sum stipulated in the policy." An agreement which by express terms both creates and limits an obligation cannot logically or justly be used to show the existence of the duty

and then ignored in determining its extent in money. That has been done here, although in Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L.R.A. (N.S.) 184, the possibility was denied. Notwithstanding, it is now held that the estoppel operates to save the contract as to defendant's liability but to abrogate the same contract as to the money limits it set for that liability. I am unable to understand how it is done, logically or legally.

This is not a case of disclaimer of liability by the insurer such as is presented in the cases cited in the majority opinion. It is, on the contrary, one of liability acknowledged by the insurer, who has strictly and properly performed its contract to defend. All defendant is doing now is to insist that its performance, on the money side, be measured by the contract and stop where the contract says it should stop. Defendant has never at any time taken a position legally or morally inconsistent with that. It could not know when it undertook the defense that the recovery would exceed the policy limits. Nobody could know that. Usually, but not always, it is assumed by all concerned that the policy figures will not be exceeded.

There is no showing that the insured was kept out of the defense or prevented from interposing her own personality to whatever extent she wanted. There is no showing that defendant took away the defense from her. The only tenable conclusion is that, having hired defendant to conduct the defense, Mrs. Johnson permitted her hireling to do simply what the contract called for. There is no intimation that it was not well and properly done. There is no suggestion that defendant was at fault or that the insured was prejudiced. Hence, there was no estoppel within Farmers & M. State Bank v. Huschke, 165 Minn. 71, 205 N. W. 637.

It is said that there is among the cases none which relieves the insurer from liability under such circumstances. In my view, none of them impose liability upon the insurer in such a case. Neither do they suggest, to me, any rule or principle or disclose any holding that permits a contract limit of money liability to be increased by the mere performance of the contract and nothing more. This decision means, at least as to contracts of liability insurance, that in

order to escape a demand beyond the contract limits, the insurer, before doing its plain contract duty and taking over the defense of a suit, must in writing inform the insured what the contract means. Such a nonwaiver notice or agreement has always been a wise precaution. But never before, so far as I know, has it been held necessary in order to restrict to the policy limits the amount of recovery. I have always supposed heretofore that recovery on a contract to pay money was restricted, in every case, to the amount promised. But now a way has been found, by a new kind of estoppel, first to save the contract as to the promisee and then abrogate it as to the promisor. I cannot yield my assent to such a process.

