# ALICE PETERSON v. GERALD J. MALONEY.
## MARYLAND CASUALTY COMPANY, GARNISHEE.[1]

November 7, 1930.

No. 28,091.

*Barrows, Stewart, Jackson & Junkin,* for appellant.
*Orr, Stark, Kidder & Freeman,* for respondent.

[1]Reported in 232 N. W. 790.

OLSEN, C.

The Maryland Casualty Company appeals from the judgment entered against it as garnishee in the action.

Plaintiff's husband, George Peterson, was killed in an automobile accident. Plaintiff as administratrix of his estate brought suit against Gerald J. Maloney, the driver of the car, a small truck, involved in the accident, and against the White Bear Yacht Club, the owner of the car, to recover damages for the death of her intestate, claimed to have been caused by negligence on the part of Maloney in operating the car. She recovered judgment against Maloney but failed to recover against the White Bear Yacht Club. The Maryland Casualty Company, hereinafter referred to as the company, is the insurer of the yacht club under an accident insurance policy on the car in question. Plaintiff garnisheed the company, and upon supplemental pleadings its liability was tried before the court and plaintiff recovered judgment.

Two main questions are presented by the appeal: (1) Whether at the time of the accident Maloney, the driver of the car, was covered by the terms of the insurance policy issued to the yacht club by the company; (2) whether the company, by assuming the defense of Maloney in the main action and by certain representations made to him, is now estopped to deny that he was covered and protected by the terms of the policy. The trial court found in plaintiff's favor on both of these issues. If the evidence sustains the court's findings on either question, the decision and judgment must stand.

The court found as facts that at the time of the accident Gerald J. Maloney was a servant and agent of the White Bear Yacht Club but that the car was not then being operated in the course nor within the scope of his employment. The finding that Maloney was at the time an employe of the yacht club is challenged. While not decisive of any issue on this appeal, we find the evidence sufficient to sustain the findings. The yacht club had and operated a golf course for its members. It owned and used in that activity the small truck involved in this accident. It employed one Mr.

Vardon, who had charge of the golf grounds, gave lessons, had certain concessions, and had charge of the business. Maloney was employed as an assistant to Vardon to take care of the golf grounds, do sodding and repairs on the course, and repair golf clubs. While at one place in the record Maloney testified that he was employed by Vardon, the reasonable inference, nothing to the contrary appearing, is that Vardon, as manager of the golf activity, hired Maloney for the yacht club as its employe.

■ The coverage clause in the policy of insurance here in question provides:

"The insurance provided by this policy is hereby made available, in the same manner and under the same conditions as it is available to the named assured, to any person operating, and/or to any other person while riding in, and/or to any other person, firm or corporation legally responsible for the operation of any of the automobiles described in the statements, provided the use and operation thereof are lawful and with the permission of the named assured."

The court found as facts that at the time of the accident Maloney was operating the car with the permission of the White Bear Yacht Club; that the use and operation thereof by him were lawful; and that the operation thereof came within the coverage provision of the insurance policy above set forth. In its conclusions of law the court held that Maloney was covered by the terms of the insurance policy as to this accident. These findings and conclusions are challenged as not justified or sustained by the evidence. The specific question raised is that the evidence is insufficient to justify a finding that Maloney was using the car with the permission of the named assured, the White Bear Yacht Club, so as to come within the coverage provision of the policy.

Vardon was in charge of the golf grounds and the golf business of the yacht club. The car was furnished for use in that business and was under Vardon's control. He acted as the representative of the yacht club in the matter. Maloney was his assistant. On two prior occasions Maloney had used the car for his own personal convenience after working hours. On each of these occasions he

asked Vardon if he could use the car to go to see his mother and his doctor, and Vardon said "yes." He then used the car for trips to St. Paul and North St. Paul to see his doctor and to visit his mother. On the evening of the accident, he again asked Vardon for permission to use the car to go to see his doctor and his mother, and Vardon said "yes." On that evening in question, however, Maloney, after having received permission to use the car, did not start out on his trip until too late to go to see his doctor or his mother and used the car for other purposes. At the time of the accident he was driving into the city of St. Paul, some 12 miles from his place of employment, for personal purposes of his own. He was on his way to St. Paul, where his doctor had his office, and was traveling the route he would go to the doctor's office; but as it was then in the middle of the night and the doctor's office closed he had no intention of going to see the doctor. The question whether he was using the car with the permission of the assured under the terms of the insurance policy is perhaps close. Not much authority either way is found upon the precise question.

The insurance under the policy here, and under policies generally used in this state, is liability rather than indemnity insurance. Hence under our practice a plaintiff who seeks to recover damages caused by the operation of an insured car may join the insurance company as a defendant in the action, or if not so joined may, after obtaining judgment against the assured or against one covered by the provisions of the policy, proceed by garnishment against the insurer.

In construing the provisions of the policy, we start with the well established rule that it is construed strictly as against the insurer and liberally as to the insured, and that any ambiguity as to meaning must be resolved in favor of the insured. 3 Dunnell, Minn. Dig. (2 ed.) § 4659, and cases cited in the notes. Under that rule, what constructions are reasonably permissible of the policy provision making the insurance available to any person operating the car with the permission of the named assured? Should it be held, where one asks permission to use a car and names the purpose for

which he desires to use it, and the owner, without restriction or qualification except as embodied in the request, grants permission, that then any use made of the car for any other purpose than as specified in the request is not a permitted use under the terms of the policy? We do not feel that so narrow a construction of the coverage clause should be adopted. There was no time stated here as to when the car was to be used or returned. Inferentially it was to be used in the evening after working hours. It would not seem that the change of purpose, while going to a place where he had stated he was going, would, so far as this insurance policy is concerned, annul the permissive character of the use of the car. The conclusion is that, upon the facts shown, the court was justified in finding that under the terms of the insurance policy Maloney was using the car with the permission of .the assured and was covered thereby at the time of the accident.

The case of Dickinson v. Maryland Cas. Co. 101 Conn. 369, 125 A. 866, 869, 41 A. L. R. 500, is very similar to the case at bar. There a member of the household of the owner of the car granted to a servant of a company in which the owner was interested permission to use the car to go to the servant's home to change his clothes. The permission was given with the qualification that the servant should "hurry back." The servant drove part way towards his home, stopped at a saloon, and there picked up three acquaintances. The car was then driven in a direction away from the servant's home for more than a mile to accommodate his companions, and two more stops were made. On the way back from this journey the accident happened. The servant testified that he still intended to go to his home if he found he had time to do so; if not, he intended to return the car to the owner's garage. The court, in considering the policy clause, "provided such use or operation is with the permission of the named assured," said: [101 Conn. 377]:

"Does this language mean the permission to use the car, or the permission to use the car in a specified manner or for a specified purpose? These are the two constructions which confront us."

The court then goes on to give the general rules, that the contract is to be strictly construed as to the insurer, and that if it is doubtful which of two constructions should be adopted the doubt must be resolved in favor of the insured or the one injured. The court in its well considered opinion then adopts the construction that permission to use the car brought the user within the terms of the policy at the time of the accident, although he was then using the car for a purpose different from the one for which he had asked permission to use it. In the syllabus to the case in 41 A. L. R. 500, it is stated that such permission "is not limited to use of the car for a specified purpose, but extends to any use made while the permission lasts." The opinion sustains that statement. It is true that the opinion also states that the deviation from the route to the servant's home was so slight that there should not be attached to it by construction the import of annulling the protective features of the policy. But it had already construed the policy as stated.

The case of Frederiksen v. Employers L. Assur. Corp. Ltd. 26 F. (2d) 76, is cited by appellant. There permission was granted to one Bryson to use the car to go to an early morning funeral. After attending the funeral, Bryson used the car to drive around the city with some of his companions until noon. In the afternoon he and his companions, without permission, used the car to drive to a place 40 miles away, and on the return trip, about six o'clock that evening, the accident happened. The court distinguishes the case from Dickinson v. Maryland Cas. Co. 101 Conn. 369, 125 A. 866, 41 A. L. R. 500, on the facts and holds the insurer not liable.

■ Extended discussion of the question of estoppel is not deemed necessary. The company did take over the defense of the White Bear Yacht Club and Maloney in the main action and conducted the defense for both of them throughout. The evidence justifies the findings of the court that it took over and conducted the defense with knowledge of the facts and of the extent of the permission given to Maloney to use the car, and that it at no time disclaimed liability until after the trial and return of the verdict. There is evidence to show that Maloney was directed by a representative of the company that if any suit was brought and any papers served

on him he was to bring the papers to the company's attorney and he would take care of it, and that Maloney did so. At the time the answer was sent to Maloney to be verified, the accompanying letter from the company's attorneys said: "Although there is no obligation upon us to do so, we are appearing for you in this case"; and in a conversation with one of the attorneys substantially the same statement was made.

These statements appear to lend support to rather than to militate against the theory of estoppel or waiver, for if the company voluntarily assumed the defense, knowing that it was not obligated to do so, an element of estoppel or waiver was shown. Our own cases of Tozer v. Ocean A. & G. Corp. Ltd. 94 Minn. 478, 103 N. W. 509; Patterson v. Adan, 119 Minn. 308, 138 N. W. 281, 48 L.R.A.(N.S.) 184; Mann v. Employers L. Assur. Corp. 123 Minn. 305, 143 N. W. 794; and Oehme v. Johnson, 181 Minn. 138, 231 N. W. 817, quite fully cover the subject. The case of Sargent Mfg. Co. v. Travelers Ins. Co. 165 Mich. 87, 130 N. W. 211, 34 L.R.A.(N.S.) 491, as well as Mann v. Employers L. Assur. Corp. 123 Minn. 305, 143 N. W. 794, sufficiently show how the company, by proper notice, could have avoided any estoppel against it in undertaking the defense of the action. The evidence here is sufficient to sustain the court's findings and conclusion on this issue.

The rules of law as to gratuitous bailments have no application here.

Judgment affirmed.

STONE, J. (concurring).

I concur in the result.