**SECURITY INS. CO. et al. v. JAY.**

**Civ. No. 655.**

United States District Court,
D. Minnesota, Second Division.

Nov. 14, 1952.

A. J. Berndt, Mankato, Minn., and Carroll & Thorson, Minneapolis, Minn., for plaintiffs.

Gallagher, Farrish & Sheran, Mankato, Minn., for defendant.

NORDBYE, Chief Judge.

On or about August 14, 1950, one Charles Yahnke was injured when the trailer which was attached to defendant Jay's car broke loose from Jay's moving car and caused Yahnke, who was riding on the trailer with Jay's knowledge and consent, to jump or be thrown to the ground. Yahnke subsequently died from the injuries.

Jay was insured against liability for bodily injuries, property damage, and medical expenses under a policy issued to him by the plaintiff herein. One of the exclusionary provisions of that policy declared,

"This policy does not apply:

\* \* \* \* \* \*

"(d) under Coverages A and C, to bodily injury to or sickness, disease or death of any employee of the Insured while engaged in the employment, other than domestic, of the Insured or in

domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law; * * *."

(Coverages A and C apply to bodily injury and medical payments, respectively).

Plaintiff now brings this action for a declaratory judgment to determine if this exclusionary provision applies and thereby relieves it from liability under the policy. Plaintiff contends that Yahnke was Jay's employee and therefore was not protected by the provisions of this policy. Defendant Jay contends (1) that this Court lacks jurisdiction, (2) that Yahnke was not an employee of Jay when the accident occurred, and (3) that plaintiff has waived its right to set up the above quoted clause as a defense and is estopped from doing so. The special administrator of Yahnke's estate originally was joined as a defendant to the action, but the action has been dismissed as to him.

 Jay contends that jurisdiction is lacking because no action has been filed by Yahnke's representative, that the amount which will be in controversy therefore is unknown now, and the $3,000 jurisdictional amount therefore is lacking. The action is based upon diversity of citizenship. Some authority appears to support Jay's position. Standard Accident Ins. Co. v. Alexander, Inc., D.C.Tex., 23 F.Supp. 807. But compare Commercial Casualty Ins. Co. v. Humphrey, D.C.Tex., 13 F.Supp. 174. Others have held, however, that the face amount of the policy determines the amount in controversy. Builders & Manufacturers Mutual Casualty Co. v. Paquette, D.C.Me., 21 F.Supp. 858; C. E. Carnes & Co. v. Employers' Liability Assurance Corp., 5 Cir., 101 F.2d 739. But others have held that the expense of defending, not the face amount of the policy is the amount which determines jurisdiction. United States Fidelity & Guaranty Co. v. Pierson, D.C.Ark., 21 F.Supp. 678, reversed on other grounds, 8 Cir., 97 F.2d 560. The question does not appear to have been decided in Minnesota. Because the fact situations vary so substantially, no general rule seems available at this time. The mere fact that a claim has not been filed should not determine if the court does or does not have jurisdiction. American General Ins. Co. v. Booze, 9 Cir., 1945, 146 F.2d 329. Each case must be determined on its realistic facts.

But in the instant case it is admitted that a claim is being made by Yahnke's representative. Yahnke left a widow and one or more adult children surviving him. In Minnesota the maximum amount allowable for wrongful death is $17,500. For the Court not to take judicial notice of the almost invariable practice of litigants to seek the maximum amount in their claim or complaint would ignore what is known to lawyer and layman alike. The insurance policy in the instant case covers up to $10,000 for bodily injury to one person and to $20,000 for all persons involved in an accident. Consequently, it appears that the required jurisdictional amount exists here. To reject jurisdiction because suit has not yet been started would ignore one of the purposes of a declaratory judgment—to determine questions prior to the filing of a regular action and prevent multiplicity of actions. Consideration of the premises justifies the conclusion that the Court has jurisdiction in this case.

 Plaintiff's contention that Yahnke was acting as Jay's employee when the accident occurred appears justified on the record presented to the Court. Jay hired Yahnke to assist him in repairing Jay's corn crib. Yahnke worked at that job for Jay on the morning of the accident. Jay then invited Yahnke to join him for lunch at Jay's house in town. Although Jay did not undertake to furnish Yahnke his lunch as part of the employment arrangement, Jay and Yahnke proceeded to the lumber yard after finishing their lunch and noon time rest period. There they loaded onto Jay's trailer the lumber for the corn crib upon which they were working and were going to work that afternoon. Yahnke rode on the load on the trailer to secure it, and Jay proceeded to drive his car to which the trailer was attached in the direction of the farm and the corn crib. While so proceeding, the tongue of the trailer broke, and Yahnke was fatally injured in his fall from the

trailer. The lunch period had expired when the accident occurred. Work relative to the corn crib had been and was going to be performed that afternoon. The material which was upon the trailer was for the crib, and it was to be used by Yahnke and Jay in repairing the crib. The evidence does not justify the conclusion that Yahnke was working free for Jay while hauling lumber to the job. Yahnke was working by the hour. And whether he was actually doing carpenter work or aiding in the transportation of lumber so as to enable him to continue his work on the crib, every inference suggests that he was to be paid by Jay for all of such work. Jay's statement which is in evidence leaves little doubt that he paid Yahnke by the hour and that he considered that Yahnke's time had started again when they were loading the lumber. In view of these premises, therefore, Yahnke was serving Jay as an employee when the accident occurred.

 As a third defense, Jay seeks application of the rule that, where an insurer has knowledge, actual or presumed, of a defense of nonliability under the policy, and without notifying the insured of this defense or reserving the right to raise the defense, assumes control of the insured's defense, then the insurer can be held estopped from raising the defense without proof of prejudice. This rule is well established in Minnesota. Tozer v. Ocean Accident & Guarantee Corp., 94 Minn. 478, 103 N.W. 509; Mann v. Employers' Liability Assurance Corp., 123 Minn. 305, 143 N.W. 794; Oehme v. Johnson, 181 Minn. 138, 231 N.W. 817, 81 A.L.R. 1308; Peterson v. Maloney, 181 Minn. 437, 232 N.W. 790; Simons v. Cowan, 217 Minn. 317, 14 N.W.2d 356.

Jay gave prompt notice of the accident to his insurer as required by the policy. And in accordance with the policy, the insurance company commenced an investigation. A misunderstanding as to the type of trailer involved in the accident caused the plaintiff to raise temporarily a question of coverage but this was cleared up, and thereafter, and subsequent to August 16, 1950, Jay was assured that the plaintiff would take care of the claim. Jay, of course, relies upon these assurances to establish his surrender of control and the plaintiff's assumption of control. An attorney interviewed Jay and then prepared a statement for Jay to sign which Jay did sign on August 16, 1950, at the attorney's office. There may be some doubt whether the contents of this statement were clearly sufficient to put the insurer on notice that Yahnke was an employee at the time of the accident. However, it may be assumed for the purpose of this case that plaintiff was put on notice by this statement; at least, plaintiff had reason to believe that this defense might be available. Since insurers are presumed to know the contents of their policies, General Tire Co. v. Standard Accident Ins. Co., 8 Cir., 65 F.2d 237, and as soon as the insurer did have knowledge of the fact that Yahnke was an employee, it is presumed to have had knowledge of its defense of nonliability. Until the beginning of this action on July 8, 1951, there was no notice to Jay that the plaintiff was aware of this defense or that it reserved its right to raise it.

 But while Jay's first statement may seem to indicate that Yahnke was Jay's employee at the time of the accident, apparently the plaintiff's attorneys felt it did not satisfactorily determine it. Accordingly they took additional statements from Jay on November 25, 1950, and on December 20, 1950, the contents of which obviously indicate they were taken to be used in asserting a defense of no coverage.

In addition to the above conduct, on March 2, 1951, the plaintiff sent an offer to Yahnke's survivors to settle for the nuisance value of the claim in the amount of $600, which was not accepted. A fair construction of this offer, however, would be that it did not constitute any admission of liability either of the insurer or the insured. Plaintiff specifically stated in this letter that it was not liable because there was no policy coverage, coverage being excluded by the terms of the policy in that Yahnke was an employee of the insured at the time of the accident, and furthermore that Jay was not liable because of Yahnke's assumption of risk and contributory negligence.

While these acts over the period of nearly eleven months show some exercise of control by the plaintiff, the question is whether they constitute a "control of the defense" within the meaning of the rule Jay seeks to apply. The existing holdings in Minnesota apply the rule only where the insurer has litigated the main action, although the language used does not necessarily limit the rule to that situation. There are no Minnesota cases passing one way or the other upon the effect of a lesser control by the insurer. General Tire Co. v. Standard Accident Ins. Co., supra, held the insurer estopped for making a settlement that admitted liability of the insured, although the insurer quickly repudiated the settlement and took no further part in the defense. The control required by the court in that case was merely exclusive control of the defense of "claims". But even with this interpretation of "defense", which includes defense of claims, the General Tire Co. case can still be distinguished from Jay's situation because that case emphasized the prejudice caused by the admission of liability in the settlement. The importance of this difference might be questioned because the test of the rule is control, not prejudice. But it seems obvious that the ultimate basis for the rule is the inference of prejudice in situations where prejudice probably or inevitably exists. Tozer v. Ocean Accident & Guarantee Corp., supra, [94 Minn. 478, 103 N.W. 511], the leading case in Minnesota, clearly indicates that this rule of estoppel is merely an outgrowth of ordinary estoppel in pais. There, the insurer accepted the control and defense of the action and did conduct the defense, which resulted in a verdict against the insured. That case relies solely on authorities dealing with ordinary estoppel, and furthermore, in finding an estoppel, it required existence of all of the traditional elements of estoppel including prejudice. The appeal arose on a demurrer to the complaint which was overruled in the lower court. The dissenting opinion was in support of the demurrer because the complaint failed to show injury or damage by a reliance upon the insured's conduct. The majority upheld the complaint, stating, "Appellant comes within the rule that a person is precluded from taking, merely because his interests may change, a position inconsistent with the one previously assumed by him, and to the *prejudice* of a third person." (Italics supplied.) Furthermore, the court points to what it believes was the prejudice, preceded by a reference to the insurer's conduct, stating, "Relying upon such course of conduct, respondent changed his attitude in respect to the case, and, instead of reserving to himself the right to select his own counsel, conduct a trial, or make settlement, he turned over to appellant the entire matter, and executed the surety bond at its request." 94 Minn. at page 484, 103 N.W. at page 511. There is nothing in the later Minnesota cases inconsistent with the teaching of the Tozer case as to the basis for an estoppel in cases of this kind. The inference of prejudice seems now to be conclusively presumed in the situations where the insurer conducts the litigation of the main action. And in any other taking over of the defense, if the Court can infer prejudice then it should find an estoppel. But where, as here, the authorities for conclusive presumption of prejudice are distinguishable and unless this situation permits an inference of prejudice, cases like the one at bar should not give rise to estoppel.

I find that Jay was not prejudiced in any way by the activities of the Security Insurance Company. It is true that the plaintiff took an unseemly length of time to finish its investigation and to come to a conclusion on the matter, but the delay here will not cause any loss of evidence nor will it impair Jay's preparation for trial. Although it may be conceded that Jay may have believed the plaintiff was taking care of the claim when actually the plaintiff was getting Jay to sign statements that would exclude coverage, nevertheless those statements seem to reflect the true situation as to Yahnke's employment and Jay cannot contend that he was prejudiced, especially when the policy requires him to give all reasonable assistance and cooperation in establishing the true facts as to how the accident happened.

Thus, it cannot be concluded that that which plaintiff did constitutes the taking

over of the defense of the claim so that its conduct should estop it from asserting the claim of no coverage. A mere delay in obtaining the facts of the case by an inept or inexperienced investigator, on this showing, at least, should not form the basis of an estoppel. And the offer of the so-called nuisance settlement to the Yahnkes, specifying as it did that there was no coverage under the policy but that a settlement would be made on the basis of that which it would cost to defend the suit, should not, on this showing, constitute conduct which estops the plaintiff from now asserting to the suit the plea of no coverage. In that the evidence clearly establishes that Yahnke was an employee of Jay's and that as such employee he was excluded from coverage by the terms of the policy, it follows that plaintiff is entitled to the declaratory judgment as prayed for in its complaint.

Findings of fact and conclusions of law in accordance herewith may be presented.

An exception is allowed.