ETTA M. BARNES *vs.* DIRIGO MUTUAL FIRE INSURANCE COMPANY

and

SAME *vs.* NARRAGANSETT MUTUAL FIRE INSURANCE COMPANY.

Lincoln.     Opinion April 27, 1923.

*A warranty by construction in an insurance policy cannot lawfully be declared to*
*include anything not fairly within its terms.    A policy with doubtful meaning*
*should be construed most favorably to the insured, if such construction is*
*a reasonable one and would prevent injustice, where a literal construc-*
*tion would result in manifest injustice.*

These are two actions of assumpsit on two policies of fire insurance issued sever-
ally by the defendants.    The cases are reported to this court.

To constitute a warranty during the term of the risk, requires more words than
the insurers have used.    We are asked to extend the meaning of the words
"now personally and continuously occupied" and declare a warranty by con-
struction.    This cannot lawfully be done.    A warranty cannot include any-
thing not fairly within its terms.

A standard insurance policy being prepared by the insurers should be construed
when the meaning is doubtful most favorably to the insured, who had nothing
to do with the preparation thereof.    A liberal construction of an insurance
policy, if it is a reasonable one and will prevent injustice, should be adopted
when a literal construction would lead to manifest injustice.

If it was intended by the insurers to insert words in the rider which should avoid
the policy if the plaintiff did not continuously occupy the premises until the
expiration of the risk by limitation, such intention is not apparent from the
record.

On report on an agreed statement.    The plaintiff owned a farm
and certain personal property thereon in Wiscasset, Maine.    On
August 22, 1917, she procured two policies of insurance on the personal
property, one' in the Dirigo Mutual Fire Insurance Company for
$2,000, and the other in the Narragansett Mutual Fire Insurance
Company for $1,100.    On June 1, 1919, the plaintiff leased the farm
to òne Dodge, who thereupon took possession of · the same and the
plaintiff removed therefrom.    Each of the two policies had attached

to it a rider or slip as follows:   "If the dwelling is not now personally and continuously occupied by the assured, or becomes vacant by his removal therefrom, and so remains vacant for more than ten days without a written permit, then this policy shall be void."   On January 9, 1920, the buildings on the premises and the personal property insured were both damaged or destroyed by fire.   At no time were the premises vacant.   It was agreed that in the event the defendants were liable, the Dirigo should pay $1,369.72, and the Narragansett $964.28, and interest from March 22, 1920.   By agreement of the parties upon an agreed statement the cases were reported to the Law Court.   Judgment for the plaintiff in both cases.

The cases are fully stated in the opinion.

*Arthur S. Littlefield and Carl M. P. Larrabee,* for plaintiff.

*William H. Newell and W. J. Knowlton,* for defendants.

SITTING:  CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

HANSON, J.   These are two actions of assumpsit on two policies of fire insurance issued severally by the defendants.   The cases are reported to this court upon the following agreed facts:—

Each of the defendants insured the plaintiff under the Maine Standard Policy issued August 22, 1917, for three years against fire, the Narragansett $1,000, on neat stock not to exceed $75 on each; the Dirigo $1,100, on neat stock not to exceed $75 on each, $100 on vehicles, and $800 on horses not to exceed $200 on each.

At the time of the insurance the premises were occupied by the assured and her husband and continued so to be until about June 1, 1919, when they were leased to Henry M. Dodge who before that lived near by and did the work about the place and barn of the plaintiff.

The plaintiff left there to be cared for by Dodge the personal property for which compensation is claimed and also some household furniture.

Dodge brought there his own furniture and several head of stock which were also lost in the fire without insurance.

While the premises were under lease to Dodge on January 9, 1920, the buildings with their contents were totally destroyed by fire.

It is agreed that the plaintiff lost insured property for which, if liable, the defendant Narragansett Mutual Fire Insurance Co. should pay $964.28 with interest from March 22, 1920, and the Dirigo Mutual Fire Insurance Co. $1,360.72 with interest from the same date.

The defendants contend that they are not liable because of the provisions of a rider attached to the policies, the first paragraph of which reads "If the dwelling is not now personally and continuously occupied by assured, or becomes vacant by his removal, and so remains vacant for more than ten days without a written or printed assent of the company, this policy shall be void."

If this contention is correct and constitutes a defense judgment is to be for the defendant, otherwise for the plaintiff.

The full policy need not be printed but may be used by either party.

Five of the neat stock were kept by Dodge and the plaintiff paid him therefor, the balance of the neat stock and the vehicles, harnesses and robes were leased with the premises to Dodge, all owned by the plaintiff. Lost twenty-six cows, one bull and one horse (being kept for the plaintiff) and the vehicles, etc.

The defendants' counsel in his brief claims that these two policies were void for the reason, 1. "that the plaintiff did not *personally* and *continuously* occupy the premises from the issuance of the policies to the date of the fire, in accordance with the terms of the rider attached thereto."

2. "because the understanding agreement and warranty between this plaintiff and these defendants was that she, the plaintiff, was then occupying the buildings and that she would occupy them personally and continuously during the times for which these policies were issued, or that the policies should be void."

3. "that such conclusion is the only tenable interpretation of the insurance contract between the parties."

This contention we are not able to sustain. The rider does not contain language from which such conclusion can fairly be drawn. Considered as a whole, it leaves no doubt as to the intention of its author. Provision is made for, and a limitation fixed in case of, a vacancy,—a limitation of ten days, as against that of thirty days as in the body of the policy. The latter provision would never have been made had the parties agreed that the plaintiff and none other should occupy the premises during the terms of the policies. The true interpretation of the rider is that the buildings should be occupied

continuously by the owner or some other person, and that a vacancy for more than ten days would invalidate the policy.   The language used in the first sentence, "if the dwelling is not now personally and continuously occupied by the assured," must be held to be words of description, and not a warranty that the plaintiff would remain in the buildings during the continuance of the policy.   Now "personally and continuously occupied" describes the use to which the property had been subject, its use at the date of the policy and its prospective use, which in fact continued its then (now) use for more than a year thereafter.   The owner had been so occupying, was then occupying, and intended to occupy the property indefinitely, but evidently changed her intention, as she had the right to do, and in contemplation of just such happening, the defendants attached the rider providing for a vacancy for not more than ten days under a stipulation for forfeiture.   See *Joyce* v. *Marine Insurance Co.*, 45 Maine, 168; *Stout* v. *City Fire Ins. Co.*, 79 Am. Dec., 539.   If the parties intended to agree to any other forfeiture, it would have been an easy matter to have so stipulated, and avoid the ambiguity and uncertainty of the language actually used, which the defendants now urge as a continuing warranty of personal occupancy by the plaintiff to the end of the term.   To so hold in the instant case would work manifest injustice, against which courts have hitherto pronounced.   To constitute a warranty during the term of the risk, requires more words than the insurers have used.   We are asked to extend the meaning of the words "now personally and continuously occupied" and declare a warranty by construction.   This cannot lawfully be done.   A warranty cannot include anything not fairly within its terms. *Blood* v. *Howard Insurance Co.*, 12 Cush., 472.   In *Burlington Ins. Co.* v. *Brockway*, 138 Ill., 644, a building represented as occupied as a storehouse and dwelling-house, with a provision against vacancy, was held not avoided by its occupancy only as a storehouse, as the warranty related only to its use when insured, and express words are necessary for a continuing warranty.   If property be denominated as the house occupied by a particular person, this is at most a warranty that it is, and not that it shall continue to be, so occupied. May on Insurance, Sec. 247; *Liverpool &c. Insurance Co.* v. *McGuire*, 52 Miss., 227; *Burlington Ins. Co.* v. *Brockway*, 138 Ill., 644.   In *Catlin* v. *Springfield Insurance Company*, 1 Sumn., 435, Federal Cases No. 2, 522, the insurance was "on a dwelling house in Vermont,

owned by Hayden & Hobart of Burlington and at present occupied by one Joel Rogers as a dwelling house, but to be occupied hereafter as a tavern and privileged as such." The ground of defense was that the building was insured to be occupied; that when burnt it had been a long time vacant, often deserted, derelict, and was destroyed by foul means, and that had the house been occupied as insured, the loss could not have occurred from the cause which destroyed it. It was held that the words in the policy did not constitute a warranty that the house should, during the continuance of the risk, be constantly occupied as a tavern, and that the risk continued although it was vacant.

See *Cumberland Valley Mut. Protection Co.* v. *Douglass*, 58 Pa., 419, 98 Am. Dec., 298; May on Insurance, Vol. 1, Page 501; 19 Cyc., 687; *Kimball* v. *Aetna Ins. Co.*, 9 Allen, 540; *Garnwell* v. *Merchants &c. Fire Ins. Co.*, 12 Cush., 167; *Foy* v. *Aetna Ins. Co.*, 3 Allen, 29; *Somerset Co. Mutual Fire Ins. Co.* v. *Usaw*, 112 Pa. St., 80. A standard insurance policy being prepared by the insurers should be construed when the meaning is doubtful, most favorably to the insured, who had nothing to do with the preparation thereof. *Matthews* v. *American Central Ins. Co.*, 154 N. Y., 449, 39 L. R. A., 433; *Rickerson* v. *Hartford Ins. Co.*, 149 N. Y., 307, 313. A liberal construction of an insurance policy, if it is a reasonable one and will prevent injustice, should be adopted when a literal construction would lead to manifest injustice. Idem.

Without the rider the policy in suit provided for vacancy by removal of the "owner or occupant,"—clearly contemplating occupancy by a possible tenant, as well as by the owner. The terms are plain, and a violation of the same releases the insurer from liability. "The standard policy by its terms is declared void if the premises become vacant by the removal of the owner or occupant, and so remain for more than thirty days without the assent of the company, in writing, or in print, irrespective of the question whether such vacancy materially increases the risk or not." *Knowlton* v. *Patrons Androscoggin Fire Ins. Co.*, 100 Maine, 481. But the dwelling-house never became vacant. It was occupied by a tenant as a place of abode at the time of the fire. The tenant moved in when the plaintiff moved out. For a dwelling-house to be occupied within the meaning of such condition, it must be occupied by human beings as their customary place of abode. *Herrman* v. *Adriatic Fire Ins. Co.*, 85 N. Y., 162.

No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to indemnity, which, in making the insurance, it was his object to secure.     When the words are, without violence, susceptible of two interpretations that which will sustain his claim and cover the loss must, in preference, be adopted.     While courts will extend all reasonable protection to insurers, by allowing them to hedge themselves about by conditions intended to guard against fraud, carelessness, want of interest, and the like, they will nevertheless enforce the salutary rule of construction, that as the language of the condition is theirs, and it is therefore in their power to provide for every proper case, it is to be construed most favorably to the insured.     May on Insurance, Sec. 175, Note 1. The same author, by way of illustration, says:     ''Thus, if a stipulation be ambiguous, and no light can be thrown upon it in accordance with the received principles of law, from extrinsic evidence, the doubt is to be resolved against the party by whom and in whose favor the stipulation is made.     Idem.     The object of the contract being to afford indemnity, it will be so construed in case of doubt, as to support rather than to defeat the indemnity provided for.     19 Cyc., 657, and cases cited.

If it was intended by the insurers to insert words in the rider which should avoid the policy if the plaintiff did not continuously occupy the premises until the expiration of the risk by limitation, such intention is not apparent from the record.

The entry will be,

*Judgment for the plaintiff*
*in both cases.*