## GEORGIA CASUALTY CO. v. WALDMAN.
### No. 6138.

Circuit Court of Appeals, Fifth Circuit.
Oct. 30, 1931.

Marion Rushton, of Montgomery, Ala., for appellant.

Richard T. Rives, of Montgomery, Ala., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

J. Francis Waldman, a minor, recovered a judgment for $15,000 against Lorry Moore, also a minor, on account of personal injuries on him inflicted by Moore in the use of an Essex sedan automobile. Under a statute of Alabama, he brought a bill in equity against Lorry Moore and the Georgia Casualty Company to have applied to the satisfaction of his judgment insurance carried with the Georgia Casualty Company by Dagostin & Angelini Bros., Inc., a corporation, against liability for personal injury accidentally caused by the use of the Essex sedan; Waldman contending that the insurance by its terms operated also to protect Lorry Moore as an assured. The case was removed to the District Court of the United States, where a decree was rendered for Waldman, and the Georgia Casualty Company appeals. The contentions of the appellant company are that its policy did not protect Lorry Moore as an assured because he had not the permission of Dagostin & Angelini Bros., Inc., to use its car at the time of the injury, and that its use by Lorry Moore for his own pleasure was not a use covered by the policy. The policy insured Dagostin & Angelini Bros., Inc., among other things, against liability imposed on it by law for damages on account of bodily injuries to any person accidentally suffered while the policy is in force by reason of the use of the described Essex automobile. It continues: "B. Additional Assureds. The insurance provided by this policy is so extended as to be available in the same manner and under the same provisions as it is available to the named assured to any person or persons while riding in or legally operating any of the automobiles described in the declarations * * * provided such operation is with the permission of the named assured." It then provides that it does not cover "while any automobile insured hereunder is being used for any purpose other than specified in declaration No. 9." Declaration No. 9 fixes permitted uses for the Essex sedan in these words: "(a) Private passenger type automobiles—pleasure and business purposes."

Taking up first the question of use, appellant's contention that the business and the pleasure of the corporation alone is meant is untenable. The corporation could have no pleasure, and applied to the corporation only that term of the contract would be meaningless. If use in the corporate business alone is meant, the broad provision for the protection of all persons who use the automobile with the corporate permission would be largely useless and inoperative. The words are general, and not expressly restricted to the business and pleasure of the named assured, but may apply also to permittees who are agreed to be entitled to insurance "in the same manner and under the same provisions as it is available to the named assured." These words make it clear that reference is had to the business or pleasure also of any person using the car by its permission, excluding, of course, uses excepted in other provisions of the policy not quoted which have no application here. The case then narrows to the question whether Lorry Moore had the permission of the named assured. The evidence shows without substantial conflict that Mr. Angelini, the president of the corporation, had the automobile in his exclusive charge for business and his personal use as he saw fit, and that he frequently gave permission to Lorry Moore, seventeen years old, his stepson and a member of his family, to use the car. On Sunday, September 1, 1929, Angelini, on leaving the city, gave Lorry Moore the keys to the car, and told him he might use the car under his grandmother's direction. There was some discussion about his going to Sunday School and on errands in it, but no definite refusal of its use at night or for pleasure. That night the grandmother permitted him to go pleasure riding, when the injury to Waldman occurred. If Angelini could speak for the corporation, we think this evidence showed a permission by the corporation for Moore's use of the car. The fact of, and not the authority for, the permission seems alone to be put in issue by the language of the answer, and to have been alone contended over in the trial. No question of the president's authority was raised, nor any evidence introduced directly upon it. An issue not set up in the answer cannot be raised on appeal. Bates v. Coe, 98 U. S. 32, 25 L. Ed. 68. Nor will an objection ordinarily be considered when raised for the first time on appeal, if it could have been removed by testimony at the trial. Duval Cattle Co. v. Hemphill (C. C. A.) 41 F.(2d) 433. It is only in exceptional cases that questions not presented nor passed upon below are reviewed. Duignan v. United States, 274 U. S. 195, 200, 47 S. Ct. 566, 71 L. Ed. 996. But, aside from this difficulty, the proven circumstances indicate a complete control over the car given to the president. It surely cannot be that an act of the board of directors is necessary validly

to permit use of a corporation's automobile as respects such an insurance policy. In none of the cases has such a contention been made. The courts, like the appellant in framing its answer, have tacitly assumed that permission from some officer or departmental manager was sufficient. See note to Stovall v. New York Indemnity Co., 72 A. L. R. at page 1394. Thus in Maryland Casualty Co. v. Ronan (C. C. A.) 37 F.(2d) 449, 72 A. L. R. 1360, any one of the general officers was assumed capable of giving permission. In Stovall v. New York Indemnity Co., supra, reported in 157 Tenn. 301, 8 S.W. (2d) 473, 72 A. L. R. 1368, a sales manager's permission to his salesman was assumed sufficient. In Peterson v. Maloney, 181 Minn. 437, 232 N. W. 790, 791, the person in charge of a yacht club's grounds was the source of permission. It was said of him: "Vardon was in charge of the golf grounds and the golf business of the Yacht Club. The car was furnished for use in that business and was under Vardon's control. He acted as the representative of the Yacht Club in the matter." The facts that Angelini was the chief officer of the corporation, and in sole charge of the car and using it at his discretion, are sufficient, in the absence of evidence to the contrary, to afford an inference that he was authorized to permit another to use the car.

Exception is taken to the refusal of the court to permit appellant to ask Angelini, when introduced as a witness by it, if he did not, on returning to the city the day after the injury, tell Lorry Moore that he had no right to use the car. This evidence could have been used only as a contradictory statement of Angelini, whose testimony on the stand was to the contrary, but, since he was the witness of the appellant, and since appellant did not claim an entrapment by the witness, appellant was not at liberty to impeach him. The putting of the question was properly refused.

Judgment affirmed.