**BOWEN v. SOUCY et al.**
**No. 231.**

District Court, D. New Hampshire.
Feb. 1, 1933.

Robert W. Upton, of Concord, N. H., for plaintiff.

Jewett & Jewett, of Laconia, N. H., and Raymond U. Smith, of Concord, N. H., for defendants.

MORRIS, District Judge.

This is a bill in equity brought in the superior court, county of Merrimack, state of New Hampshire, at the April term, 1932, and removed to this court by the Phoenix Indemnity Company.

The plaintiff, Maurice Bowen, seeks to recover on a contract of insurance issued by the defendant the Phoenix Indemnity Company to the defendant Eva Cote, by which contract the Phoenix Indemnity Company undertook to indemnify the assured against liability for personal injuries or damages to property resulting from the operation of a certain Reo sedan automobile whether operated by the assured or any other person operating with her consent. There was a trial before the court November 29, 1932, without a jury.

The following facts appear:

On October 5, 1931, the plaintiff, Maurice S. Bowen, brought an action against Ulrac Soucy to recover damages for injuries received in an automobile accident on a public highway. There was a trial by jury beginning January 19, 1932; judgment was entered on the verdict against Soucy in the sum of $6,512.45, he being the person operating the automobile covered by the policy when the accident occurred September 7, 1931. The defendant Soucy not being able to satisfy the judgment so obtained, the plaintiff brought this action to recover from the defendant Soucy, Eva Cote, and the Phoenix Indemnity Company under an indemnity policy on the car.

The policy ran to and expressly insured Eva Cote, the owner of the Reo automobile, and contained the following clause:

"The unqualified term 'Assured' whenever used in this policy shall include the Assured named in the declarations and any other person legally operating any of the automobiles described in the declarations and any person, firm or corporation legally re-

sponsible for the operation thereof, provided,

*"Such operation is with the permission of the named assured. * *. * "*

(Italics mine.)

By an indorsement attached to the policy the provisions of chapter 54, N. H. Laws of 1927, were made a part thereof.

This statute provides that such policies or contracts shall apply to "the insured and any person responsible for the operation of the insured's motor vehicle or trailer with his express or implied consent."

Miss Cote was not a party to the original suit which was against Soucy as sole defendant. The Phoenix Indemnity Company defended Soucy under an agreement with him to the effect that it disclaimed all liability under the policy, which agreement, dated October 13, 1931, is on file as an exhibit in this case. Plaintiff's counsel were also notified by letter December 8, 1931, in advance of the trial by jury, that they were appearing in behalf of Mr. Soucy by instructions of the Phoenix Indemnity Company, but that such appearance was without prejudice to the rights of the company.

Miss Cote, owner of the automobile, resided at 50 Birch street, Manchester, N. H., where she took boarders and worked in the mill part time. Soucy was her only roomer. She hired the apartment and Soucy paid board. They had occupied the apartment about two years prior to the accident. Miss Cote had owned the car since February 10, 1931. It was registered in her name and she held an operator's license. The car was given her by a Mr. Taylor, a cousin of Soucy, with the understanding that Soucy might have some use of it. It was kept in the Amoskeag Garage on Canal street, about five minutes' walk from Miss Cote's apartment.

It appears that Soucy, September 16, 1929, prior to the time of the accident, had had his license to drive a car and registration suspended. Miss Cote, the owner of the car, knew of this fact. She knew he had no license to drive an automobile. The evidence tends to show that Miss Cote allowed Soucy to use the car whenever he wished, but as he had no license to drive, she insisted that some other person having a license should operate it for him. Among those who drove the car was a Mr. Bournival of Manchester. On Sunday, September 6, 1931, the day before the accident, Soucy and Bournival went to Miss Cote and obtained permission to take the car. When Miss Cote gave Soucy the key to the car, she asked him if he had some one to drive it, and he said Bournival would drive. Soucy testified that he and Bournival drove around Manchester a short time, then went to West Manchester and took in a girl by the name of Laura Huard, a friend of Bournival's whom Soucy had never met before; that the three drove to Boston, went to a show, had dinner, then returned to Manchester, reaching there about 4 o'clock in the morning; that they drove a short distance out of the city to call on a man whom they knew and remained about half an hour; they returned to Manchester about 5:30 or 6 o'clock and went to the garage where Bournival worked as a truck driver; that during the entire trip Bournival had driven the car.

On the way back to Manchester some talk was had about whether or not Bournival would have to work that day, and it was suggested that he would put up the car and walk to his work, but Soucy said it was too far and the three would drive down to the Shasta street garage where Bournival worked.

Explaining his further use of the car, Soucy testified as follows: "I was riding in the back seat of the car and when Bournival went into the garage, Miss Huard and I started talking, and I got into the driver's seat and started to drive Miss Huard home, but she said it was too early in the morning to go to her home; she told me she had worked up north and I would like it, it was a nice place, and so we started for the Balsams, Dixville, Notch." The Balsams is more than 150 miles from Manchester. Neither Bournival nor Miss Cote knew that such a trip had been planned or undertaken. Soucy further testified that this was the first time he had driven Miss Cote's car on the highway.

Soucy drove from Manchester to Franklin, N. H., on the D. W. Highway, thence northerly from Franklin to a point where the accident occurred.

Plaintiff's counsel contends that Soucy did not violate the terms of the policy in operating the automobile without a license and that through the incorporation of the provisions of chapter 54, Laws of 1927, the policy was made to include "any person responsible for the operation of the insured's motor vehicle or trailer with his express or implied consent." See Georgia Casualty Co. v. Waldman (C. C. A.) 53 F.(2d) 24; Maryland Casualty Co. v. Ronan (C. C. A.) 37 F.(2d) 449, 72 A. L. R. 1360; Peterson v. Maloney, 181 Minn. 439, 232 N. W. 790; Maryland Casualty Co. v. Hoge, 153 Va. 204, 149 S. E. 448, 449.

■ Counsel for the Phoenix Indemnity Company contend that the coverage in the policy extends only to the "Assured," Miss Cote, and any person legally qualified to drive her car who was operating it with her consent, "express or implied." Counsel further take the position that Soucy was an outlaw on the road under the ruling of the New Hampshire Supreme Court in Johnson v. Boston & M. R. R., 83 N. H. 350, 143 A. 516, 61 A. L. R. 1178, so that no lawful permission to operate the car could be given him by Miss Cote; that permission means lawful permission and not a formal permission which the law forbids. See N. H. Public Laws, c. 101, § 9; c. 102, § 13.

Section 9 makes it unlawful to operate any motor vehicle upon any highway in this state unless the driver is licensed in accordance with the provisions of chapter 101. It further provides that it shall be unlawful to permit such a vehicle to be operated by a person not so licensed.

Section 13 of chapter 102, provides for the suspension of a license under certain conditions, and section 20 of the same chapter provides a penalty for operating a motor vehicle after an operator's license has been suspended or revoked.

I am satisfied that the second contention of defendant counsel is unsound. The word "permission" as used in the policy, and the words "consent express or implied" as used in the New Hampshire statute, incorporated in the contract of insurance, have reference to the permission or consent of the owner of the car. Whether the automobile is being operated at the time of the accident in accordance with or in violation of law is immaterial, provided it is operated with the permission or consent of the owner. Zurich Gen. Accident & Liability Ins. Co. v. Thompson (C. C. A.) 49 F.(2d) 860; Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A. L. R. 1363.

By reason of the incorporation of chapter 54, New Hampshire Laws, 1927, in the contract of insurance, all parties must have understood that the contract was made to conform to the laws of the state.

■ In construing a state statute the federal courts follow the interpretation of the highest court in the state. Malloy v. American Hide & Leather Co. (C. C. A.) 185 F. 776.

Chapter 54, supra, has been construed by the Supreme Court of New Hampshire, in the recent case of Sauriolle, Adm., v. Shea et al., 163 A. 717, 721, in a decision handed down October 4, 1932. In construing the words, "any person responsible for the operation of the [named] insured's motor vehicle * * * with his express or implied consent," the court says: "Therefore, construing the language in section 1, subd. 2, in the light of its purpose and place in the legislative scheme, the words 'express or implied consent' must be deemed to refer to the operation of the car at the time the liability, if any, arose. The words 'responsible for' are not necessarily inconsistent with this view. They perform a legitimate office in defining the legal relation of an injured plaintiff to the possible party defendant. The statutory 'assured' embraces any person operating the car with the owner's consent. They include a bailee of the owner whether he is operating the car in person or by his servant, agent, or appointee, so long as the use being made of the car is within the bounds of the owner's permission. If the car, at the time of the accident, is being driven by a subordinate of the bailee, the words 'responsible for' are essential to cover the bailee. They are likewise requisite to include the garage man whose mechanic may be testing the owner's car on the road. The function of the words is to extend the protection of the policy not only to the operator of the car, but to any person responsible for its operation. The expression describes the legal relation of such a party to the plaintiff. It was not designed to be descriptive of the factual relation of the operator to the owner. The latter feature is covered by the language as to consent. Another ground for the conclusion reached is the reluctance of the court to impute a legislative purpose to impose vicarious liability unless such an intention is clearly expressed. The attitude of this court toward any extension of such liability is found in its refusal to adopt the 'dangerous implement doctrine,' or 'family car doctrine,' extant in other jurisdictions."

■ In the instant case the evidence clearly establishes that Miss Cote consented to Soucy's use of the car on the day prior to the accident. She did not inquire where he was going or when he would return. He was not limited in its use either as to time, distance, or place. There was only one limitation as to the use of the car, and that was that it should be driven by a licensed driver. This requirement had been observed on all prior occasions. Whether because of Soucy's fear of the law or because of a desire to protect Miss Cote is immaterial. She had no knowledge that Soucy would leave Manchester at 6 o'clock in the morning, without a licensed

driver, in violation of her permission to use the car, for a trip to the mountains. It was a breach of the conditions under which he was permitted to take and use the automobile. It is not claimed that the trip was undertaken in Miss Cote's behalf. She had never met Miss Huard. The doctrine of respondeat superior has no application. Miss Cote cannot be held liable for Soucy's negligence when he was engaged in a pleasure trip for his own amusement and that of his recently acquired lady friend. Danforth v. Fisher, 75 N. H. 111, 71 A. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. Rep. 670; Roulias v. Crafts, 81 N. H. 107, 124 A. 194; Moulton v. Langley, 81 N. H. 138, 124 A. 70; Groatz v. Day, 81 N. H. 417, 128 A. 334; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; Sauriolle v. Shea, supra.

There is no substantial legal evidence that Soucy was operating the assured's car at the time and place of the accident with the consent of the owner, either express or implied, and unless the Phoenix Indemnity Company is estopped to deny coverage by reason of having assumed the defense of the original action, there must be a decree for the defendant. Trotter v. Union Indemnity Co. (C. C. A.) 35 F.(2d) 104; Frederiksen v. Employers' Liability Assur. Corp. (C. C. A.) 26 F.(2d) 76.

Plaintiff's counsel contend that because the indemnity company, with full knowledge of the circumstances affecting coverage, employed counsel and assumed the defense of the original action, and put the plaintiff to the expense of a trial upon the merits, it is estopped to deny its liability for the payment of judgment rendered in that action. Counsel cites the case of Meyers v. Continental Casualty Co. (C. C. A.) 12 F.(2d) 52, as sustaining its contention. But the facts in that case differ from the facts in the case at bar and the case does not support the broad contention of the plaintiff. Meyers was the assured. He brought suit against the casualty company for specific performance of a contract of indemnity insurance to compel the company to satisfy a judgment rendered against him on account of injuries to a minor whom he had employed in violation of a state statute. The contract of insurance expressly excepted the indemnity company from liabilities for injuries received under such circumstances. The original suit was defended by counsel for the company after notification that it disclaimed liability if the evidence disclosed that the in-

jured party was under the age of sixteen years. It was held that Meyers, the assured, having employed the injured boy in violation of the law, was not entitled to specific performance, seasonable notice of disclaimer having been given.

Turning to the policy of insurance in the present case we find that:

Agreement 1 reads: "To indemnify the Assured against loss from the liability imposed by law upon the Assured for damages on account of bodily injuries, including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons not hereinafter excluded, as the result of an accident occurring while this policy is in force, and caused by reason of the ownership, maintenance or use of any of the automobiles described in said declaration."

Agreement 2 contains a similar provision with reference to property damage.

Agreement 3 provides that the insurer shall investigate "any claim for such damages and to negotiate settlement thereof as may be deemed expedient by the Company; to defend suits for such damages, even if groundless, in the name and on behalf of the assured, etc."

Agreement 4 provides for payment of all costs taxed against the assured in any legal proceeding defended by the company.

From the testimony of Josie E. Lavery, assistant clerk of the superior court for Merrimack county, it appears that the first action was brought by the plaintiff September 23, 1931, sixteen days after the accident occurred. On the same date a similar action was brought by Cecilia Bowen, wife of the plaintiff. In both of these actions Soucy and Miss Cote were joined as defendant. These suits are still pending in the superior court in Merrimack county. Later, on October 5, 1931, two similar actions were brought against Soucy as sole defendant by the same plaintiffs, which actions were removed to the federal court and tried herein January 19, 1932.

Under the language of agreement 3, the Phoenix Indemnity Company was bound to defend the actions against Miss Cote, the assured, because of her ownership of the car even if the claims against her were groundless. When the vicarious liability sought to be imposed under the New Hampshire Statutes is considered, the company was put in a position of either defending the action in all its ramifications or standing by leaving

its interest and that of its insured unprotected. Confronted with this situation, it gave notice to Soucy October 13, 1931, that it disclaimed liability for the accident, and on December 8, 1931, gave a similar notice to plaintiff's counsel.

The latter notice was given more than a month prior to the trial by jury. It reads as follows:

"Dec. 8, 1931.

"Robert W. Upton, Esq.
  "Concord, N. H.
"Brother Upton: Re: Cecilia Bowen v. Ulrac Soucy. Maurice Bowen v. Ulrac Soucy.

"In the above entitled actions brought by you recently in the United States District Court for the District of New Hampshire, alleged to have arisen out of an automobile accident on or about Sept. 7, 1931, at or near Franklin, New Hampshire, you are hereby notified that the Phoenix Indemnity Company which carries the policy of insurance on one Eva Cote of Manchester, N. H., does not cover Ulrac Soucy, the defendant in the writs, for any injuries or damages, costs or expenses arising out of this action which may be recovered in any action against Mr. Soucy by reason of this accident.

"You are further notified that the Phoenix Indemnity Company has instructed us to file our appearance in behalf of Mr. Soucy, but the Company does so reserving its rights to at any time withdraw our appearance and inforce its rights of disclaimer as against Mr. Soucy; and any action taken or that may be taken by the insurance company or us as its attorneys in investigating, appearing, or defending any claim or suit on account of this alleged accident shall not be held to be an admission that same is covered by any policy issued by the Phoenix Indemnity Company and that the reservation of rights of the Phoenix Indemnity Company shall not in anyway be affected by any action taken on its part or by its attorneys in the matter of investigation or defense of this claim against Mr. Soucy.

"Very truly yours,
  "Jewett & Jewett. TSJ/J"

The law applicable to the facts has been recently stated by the New Hampshire Supreme Court in the Sauriolle Case, supra, as follows: "Having intervened and defended against his claim of negligence as a matter of right under the policy, it is ordinarily too late to deny the applicability of the policy after a trial of the merits. The insurer's defense of the suit against Shea, without res-ervation, with a full knowledge of the facts, and without excusing circumstances, would imply its binding acknowledgment that it had insured him and hence that the use was permissive. Sanders v. Frankfort Marine, etc., Insurance Company, 72 N. H. 485, 492, 498, 501, 502, 57 A. 655, 101 Am. St. Rep. 688; Lombard v. Maguire-Penniman Company, 78 N. H. 110, 111, 97 A. 892. When an insurer desires to raise the question whether the liability charged is one covered by the policy, it should be done seasonably, and, in any event, before the plaintiff has been prejudiced by the delay. * * * Mason-Henry Press v. Ætna Life Insurance Co., 211 N. Y. 489, 105 N. E. 826; Meyers v. Continental Casualty Co. (C. C. A.) 12 F. (2d) 52, 55. Ordinarily, and in the absence of agreement of the parties, the issue is one calling for preliminary presentation, so that the insurer's right or duty to defend the action for negligence may be first determined. But in this case the circumstances were unusual. The insurer's duty to defend O'Gorman was unquestioned, the actions against him and Shea were tried together and the issues for trial in the actions were identical except for the additional issue of Shea's scope of employment presented in the action against O'Gorman. The insurer had as much duty to defend one action as the other, subject to its exemption from defending the action against Shea if his use proved to be unpermitted. If under all the circumstances the insurer was chargeable with undue delay in presenting the issue of non-liability for Shea's negligence, the plaintiff should have judgment. This issue is one of fact and it has not been tried. The pro forma character of the ruling holding the insurer liable shows that no consideration has been given to it. The ruling cannot be sustained upon this ground, since the findings necessary to support it have not been made."

I find that the notice of disclaimer was seasonably given by the indemnity company in advance of trial. I cannot find that the plaintiff's rights were prejudiced because of lack of notice. The expense of trial before the jury was incurred after notice had been given and after plaintiff's counsel had had ample time to determine Soucy's financial standing and the chances of collecting any judgment that might be obtained against him.

Applying the law as announced by the Supreme Court of New Hampshire, in construing chapter 54 of the Laws of 1927, to the facts in the instant case, there must be a decree for the defendants.