**COLUMBIA CASUALTY CO. v. LYLE.**

**No. 7714.**

Circuit Court of Appeals, Fifth Circuit. ·

Jan. 23, 1936.

Rehearing Denied Feb. 21, 1936.

Lamar Cecil, of Beaumont, Tex., for appellant.

J. Austin Barnes, of Beaumont, Tex., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee, struck and injured by a truck owned by Yount and driven by Jolivet, a negro farm hand, sued them both for damages. The jury found Jolivet negligent, but that at the time and place in question he was not driving the truck in the furtherance of the business of Yount. From the judgment entered on that verdict for plaintiff against Jolivet for the damage suffered, $5,484, but that he take nothing against Yount, there was no appeal. Appellee then brought this suit to make his judgment out of appellant, as insurer in an automobile insurance policy issued on the truck to Yount, and/or Yount-Lee Oil Company, as named assureds. His claim was that, when the truck struck him, Jolivet was driving it with the permission of Yount, the named assured, and was therefore covered by it as "additional assured."

The defense was that Jolivet was not covered by the policy as "additional assured" both because at the time of the collision the truck was being used for purposes not covered by the policy and because it was being driven, not only without permission from the named assured to do so, but against his orders.

Both plaintiff and defendant moving at the close of the evidence for an instructed verdict, the District Judge took the case from the jury and determined it in plaintiff's favor. It is here on the sole point of law that the evidence, viewed in the light most favorable to appellee, demanded a verdict for appellant. Fourth National Bank in Wichita v. Gainesville National Bank in Gainesville (C.C.A.) 80 F.(2d) 490; Globe Indemnity Company v. Nodlere (C.C.A.) 69 F.(2d) 955. We think it did.

The following are the pertinent declarations of the policy:—

"1. Name assured—M. F. Yount and/or Yount-Lee Oil Company.

"2. Address of Assured—No. c/o Yount-Lee Oil Co. (San Jacinto Building) City or Town of Beaumont, County of Jefferson, State of Texas.

"3. The named assured is Individual and Corporation, and the Named Assured's occupation or business is Crude Petroleum Developers, Producers and Transporters.

"4. The motor vehicles described will be principally used, maintained and garaged in the city or town of Beaumont, Texas.

"5. The motor vehicles described in Declarations and the purposes for which they are and will be used are as follows—

"B. Truck type and commercial delivery motor vehicles (if any) used for Transportation or Delivery of Materials or Merchandise in direct connection with the Assured's business occupation as stated in Declaration 3. and motor vehicles of the

private passenger type which have been altered and designed for such purposes, including the loading and unloading thereof and, if the Named Assured. is an individual, or a copartnership, shall include incidental pleasure use for Named Assured's family."

Among the pertinent insuring agreements are: "Additional Insured.—(7) The insurance granted by the foregoing provisions shall apply in the same manner and under the same conditions as it applies to the Named Assured, to *any person operating* and/or to any other person while riding in, and/or to *any other person,* firm or corporation legally *responsible for the operation* of any motor vehicle described in said Declarations, or *for whom said motor vehicle is being operated with the permission of the* Named Assured."

The pertinent exclusions are:

"8. No Insurance is granted by This Policy—

"(c) While any motor vehicle is being used for purposes other than those specified in the Declarations."

Conditions:

"Assured and Named Assured:

"(A) The unqualified term 'Assured' wherever used in this policy shall include the Assured, whether one or more named and described as such in the Declarations, and in addition thereto, any person, firm or corporation entitled to insurance under the provisions and conditions of Insuring Agreement 7 hereof; but the qualified term 'Named Assured' shall apply only to the Assured named and described as such in the Declarations."

Insolvency of Assured: "(E) The insolvency or bankruptcy of Assured shall not release the Company from payment of damages sustained or loss occasioned during the life of the policy, and if execution against Assured in an action for damages is returned unsatisfied because of such insolvency or bankruptcy, the injured or his personal representative in case of death, may maintain an action against the company for the amount of the judgment obtained not exceeding the limits of the policy."

No testimony was offered at all contradicting the finding of the jury in the damage suit that in driving the truck at the time and place of the injury Jolivet was not engaged in the furtherance of the business of Yount, the named assured. None was offered to the effect that he was driving with Yount's express permission. It was claimed by appellee, and the evidence he introduced was for the purpose of establishing, that Jolivet was driving with Yount's implied permission. These are the facts as testified to by Yount, Helmke, his farm manager, and Jolivet, a workman on the farm, on which appellee relies to make this a jury issue.

Yount, owning a farm near Beaumont, employed Frank Helmke as caretaker and Jolivet as helper. He had intrusted Helmke with the truck in question under the strictest orders that no one but Helmke should drive it off the farm. The farm was being cleared and beautified as a personal hobby. Nothing was raised for sale or sold from it. Helmke, however, was authorized to use the truck, and did use it, to bring milk and eggs and other produce from the farm to Yount's house. Yount at no time either authorized or permitted any one else to authorize or knew that Jolivet had been or would be permitted to drive the truck on the public highways. On the day in question Helmke, on his own responsibility, and as he admits, directly contrary to Yount's positive orders, permitted Jolivet to use the truck to take some wood and milk to Jolivet's house for Jolivet's personal use. He, however, gave him positive instructions not to use the truck except to go straight to his home and back. When the accident occurred, Jolivet was driving from his home to the home of a woman who helped him with his children, on a personal errand of his own.

He was therefore using the truck not only without, and directly contrary to, any permission or authority from Yount, but contrary also to the direct orders of Helmke. Yount testified that he gave general and positive instructions to Helmke that he alone was to drive the truck; that no one else could do so. Helmke, at one place in his testimony, said: "Mr. Yount furnished me with a half ton truck to be used on the farm for general use, and for making deliveries to his home in town. I was to make those deliveries and no one else was to make them. Mr. Yount gave me instructions to do all the deliveries myself, and if that truck went off the place I was to drive it."

At other places in his testimony he said: "The truck was furnished to me.

He told me to do the driving, and he never changed those instructions. I did not get Mr. Yount's permission to let Jolivet use this truck on the farm. I did it on my own accord. The truck was never at any time used in the affairs of Mr. Yount, as an oil man, or the affairs of Yount-Lee Oil Company. It was never used for any other purpose than farm work. It was not used for transporting and producing oil at any time. When Mr. Yount placed the truck on the farm he told me to use it myself and not to let any one else use it on the highways."

Helmke and Jolivet both testified that Helmke permitted Jolivet to, and that he did, drive the truck on the farm. Helmke testified further as to the wood and brush that was being cleared off the farm that his instructions were to burn it on the place. None of it was to be sold or used by Mr. Yount. That instead of burning all of it he had sometimes given Jolivet permission to take some away for his own use, and Jolivet had taken it away in his own car. That on the occasion in question he had given Jolivet permission to use the truck to haul some of the rubbish off the farm to Jolivet's house for fire wood.

Jolivet testified that he was employed on Yount's farm and that at the time of the injury he had been working at the farm for two years; that during all of that time it was customary for him to drive the truck on the farm; that he saw Mr. Yount out at the farm occasionally, and he thinks Yount saw him there once driving the truck. "Mr. Yount never had anything to say to me about driving the truck. On the day in question I carried off some scrap wood in it and my gallon of milk which was furnished to me every day. When I drove the truck I drove it just about the farm. When I spoke of Mr. Yount seeing me drive the truck, I meant that he saw me drive it once on the farm, but he did not see me drive it the one or two times I drove it off the farm. He never did give me permission to drive the truck off the farm."

"On the day of the accident there was some scrap wood on the farm and Mr. Helmke ordered me to burn it. I asked Mr. Helmke if I could have the wood and he said I could, and asked me how I was going to take it home. I asked him if I could use the truck and he told me to go ahead but be sure to use the truck to haul the wood and let it stay at my home until I came back to work in the morning. I went home in the truck and unloaded the wood and milk at my house, and then filled a quart bottle and started to take the milk to Martina Bradford when the accident happened. I have never used the truck to make deliveries to Mr. Yount's house."

On this testimony appellant insists that, if Mr. Yount, the named assured, had been driving the truck at the time and place of the accident, there could have been no recovery under the policy, because it was not being used in the business or for any of the purposes stated in clause 3 of the declarations, and by clause 7 of the insuring agreements of the policy the additional assured could recover only if the named assured could. It insists further that, if the named assured would have been covered if he had been driving the car, Jolivet was not covered, because not only is there no evidence that he had the permission of the named assured to drive it, but the testimony was uncontradicted that he was driving it in the face of an absolute prohibition against his doing so.

Appellee urges that the testimony of Helmke and of Jolivet that Jolivet had been driving the truck on the farm during the two years he had been there without objection from Yount was evidence of permission to drive it there, and that his driving it off the farm was merely a deviation within the authorities he cites holding that, permission having been granted to use for a particular purpose, the policy covers the permittee as additional assured, though he deviates from the use expressly granted. Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Barnes v. Dirigo Mutual Fire Ins. Co., 122 Me. 486, 120 A. 675; Georgia Casualty Co. v. Waldman (C.C.A.) 53 F.(2d) 24; Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.(2d) 473, 72 A.L.R. 1368, and note at page 1376 et seq.

Appellant replies that the coverage of this kind of policy is intended to extend to and protect those who are using the car with the permission of the named assured and whom it may therefore be presumed the named assured would be desirous of protecting. Ocean Accident & Guarantee Corporation v. Bear, 220 Ala. 491, 125 So. 676. It insists that it does not, it cannot, extend to those who use

his car without the knowledge and consent of the named assured and over his prohibition, and whom therefore he could not be supposed to have intended to cover. It urges that those decisions which extend coverage to injuries occurring in the course of a slight deviation from uses expressly permitted are all cases where, though in contemplation the use was specific, the permission to use was general, and it should be presumed that it was the desire and intention of the named assured to protect the permittee during the deviation as well as in the course of the use the parties specifically had in ·mind. It insists that none of the cases cited by appellee are in point here. We agree with appellant.

This is not a case of deviation from a permitted use. This is a case of prohibited use. If within the ruling of cases like our case of Georgia Casualty Co. v. Waldman, supra, it be assumed that Helmke had implied authority to permit Jolivet's use of the truck on the farm, this will not avail appellee. For the use Jolivet was making was not an extension of that use, but a new and wholly prohibited one. It falls within, it is controlled by, the cases appellant relies on. United States Fidelity & Guaranty Co. v. Mann (C.C.A.) 73 F.(2d) 465; Globe Indemnity Co. v. Nodlere (C.C.A.) 69 F.(2d) 955; Trotter v. Union Indemnity Co. (D.C.) 33 F.(2d) 363; Cypert v. Roberts, 169 Wash. 33, 13 P.(2d) 55; Bowen v. Soucy (D.C.) 2 F.Supp. 481. Others which might be cited are Denny v. Royal Indemnity Co., 26 Ohio App. 566, 159 N.E. 107; American Automobile Ins. Co. v. Jones, 163 Tenn. 605, 45 S.W.(2d) 52; Frederiksen v. Employers' Liability Assurance Corp. (C.C.A.) 26 F.(2d) 76; Kazdan v. Stein, 26 Ohio App. 455, 160 N.E. 506.

As it was in those cases, it is unnecessary here to consider the question of the effect of a deviation. This is not a case of deviation from a route or use in regard to which Jolivet had permission to drive, but of driving without permission against specific orders. Assuming, as appellee contends, that the evidence is sufficient to support the finding that Jolivet had permission to drive the car on the farm, the same evidence which is relied upon to show this establishes beyond question that the driving he did on the day in question was not a mere deviation from, an extension, a culmination of that per-

mission, but an independent, a new, a completely prohibited driving. Since we find with appellant on its point that Jolivet was not an "additional assured" within the meaning of the policy, we need not decide its other point, that the car was not being used in connection with any of the purposes set out in the declarations, and there could have been no recovery if the named assured had been driving.

Appellant's request for an instructed verdict should have been granted. For failure to grant it, the judgment is reversed and the cause remanded for further and not inconsistent proceedings.